**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES RANKIN, : | |
| Plaintiff : | |
| : | CIVIL NO. 3:CV-11-2352 |
| v. : | |
| : | (Judge Caputo) |
| WARDEN B. A. BLEDSOE, *et al.*, : | |
| Defendants : | |

**M E M O R A N D U M**

**I.   Introduction**

Mr. Rankin purports to assert a cause of action under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2679(b)(1).  The suit arises from a May 17, 2010 attack on Mr. Rankin at the United States Penitentiary in Lewisburg (USP-Lewisburg).  According to Mr. Rankin, he was improperly placed in a recreation "cage" with two other inmates who assaulted him, stabbing him approximately forty-five times in the span of a minute.  (Doc. 14, Am. Compl.)  He also claims prison officials negligently failed to properly search his assailants before placing them in the recreation unit.  (*Id.*)

Pending before the Court is Defendants' Motion to Dismiss the Amended Complaint or in the Alternative, a Motion for Summary Judgment (Doc. 47.)  Plaintiff has filed a response in opposition (Doc. 52) and therefore, the motion is ripe for consideration.  For the reasons discussed below, Defendants' Motion to Dismiss the Amended Complaint or in the Alternative, a Motion for Summary Judgment, will be granted.  However, the United States will be given the opportunity to address Mr. Rankin's negligence claim as to

prison officials failure to properly search Mr. Glass, Mr. Reid and the recreation unit for weapons prior to placing him in the unit.

## II. Standard of Review

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction. "'When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.'" *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 191 n. 4 (3d Cir. 2011) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Facial attacks contest the sufficiency of the pleadings, and in reviewing such attacks, the court accepts the allegations as true. *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009). Factual attacks, on the other hand, require the court to weigh the evidence at its discretion, meaning that the allegations in the complaint have no presumptive truthfulness. *See Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In reviewing a factual attack, the court may also consider evidence outside the pleadings. *See U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 512 (3d Cir. 2007).

### B. Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is material if it might affect the outcome of the suit under governing law." *Lupyan v. Corinthian Colls. Inc.,* 761 F.3d 314, 317 (3d Cir. 2014)(citing *Doe v. Luzerne Cnty.*, 660 F.3d 169, 175 (3d Cir. 2011)). The court "`must view all evidence and draw all inferences in the light most favorable to the non-moving party," and we will only grant the motion if "no reasonable juror could find for the non-movant." *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).

At summary judgment the moving party must identify evidence that demonstrates an absence of a genuine issue of material fact. *Budhun v. Reading Hosp. and Medical Cntr.*, 765 F.3d 245, 251 (3d Cir. 2014)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The movant must support his position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by showing that the nonmoving party "failed to make a sufficient showing to establish the existence of an element essential" to that party's case. *Celotex*, 477 U.S. at 322, 106. S.Ct. at 2552.

After the moving party has met its initial burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). "The non-moving party cannot rest on mere pleadings or allegations," *Ell v. Southeastern Pennsylvania Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007), but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 231 - 32 (3d Cir. 2001). The nonmoving party must "go beyond the pleadings" and either by affidavits, deposition, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The nonmoving party "must support the assertion" that a fact is genuinely in dispute by: "(A) citing to particular parts of materials in the record . . .; or (B) showing that the materials [that the moving party has cited] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A), (B); see also Fed. R. Civ. P. 56(e)(2) (if a party fails to properly support an assertion of fact, or address another party's assertion of fact, the court may consider the fact undisputed for the purpose of the motion).

In ruling on a motion for summary judgment, the court must use the same evidentiary standard that would apply at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) ("the inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits"); *Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 129 (3d Cir. 2005). Ultimately, "[w]here the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (internal quotation marks omitted); *NAACP v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011).

### III.   Statement of Undisputed Facts

The following facts are undisputed unless otherwise indicated and are taken from the defendants' statements of material facts and Mr. Rankin's response thereto and supporting documentation of record.[1]

In the year leading up to the May 2010 attack, Mr. Rankin went "to rec ... all the time" with other inmates. (Doc. 53-2, ECF p. 8.) He never advised BOP officials that he feared for his personal safety until "the day [he] got stabbed." (Doc. 48-1, ECF p. 15; Doc. 49, Defs'. Statement of Material Facts (DSMF), ¶ 3; Doc. 53, Pl.'s Resp. to Defs.' Statement of Material Facts (PSMF), ¶ 3.) At no point did Mr. Rankin advise BOP staff that he feared for his safety or wished to be placed in protective custody. (DSMF ¶ 7.) He "didn't think it was [his] obligation to do that". (Doc. 53-2, ECF p. 6.)

In his deposition, Mr. Rankin presented three different stories as to why he was stabbed on May 17, 2010 by inmates Glass and Reid, two inmates whom he had not met before this incident. The incident took place in a Z-Block recreation cage (number 11) at

---

[1] The Court notes that while Attachments D, E, F and a copy of the video recording of the May 17, 2010 incident are identified as being submitted in conjunction with Attorney Romano's Declaration (Doc. 48-1, ECF p. 23), they do not appear in the record.

USP-Lewisburg. (Doc. 49, Defs'. Statement of Material Facts (DSMF), ¶ 1, ¶ 11 and ¶ 21.)

The first story begins a year before the May 17, 2010 incident. (DSMF ¶ 2.) Mr. Rankin believed he may be in danger because of his cellmate's former gang history. (DSMF ¶ 2.) Mr. Reddin, his cellmate, had dropped out of a gang known as the Arian (sic) Resistance Movement (ARM). (*Id*.; *see also* Doc. 48-1, ECF p. 14.) Mr. Reddin and Mr. Rankin were cellmates for at least a year at the time of the incident. During this time Mr. Rankin knew his cellmate "was marked for death." (Doc. 48-1, ECF p. 14.) He believed that because Mr. Reddin was a former ARM member who cooperated with prison authorities, other inmates also classified him as an ARM inmate and targeted him. (DSMF ¶ 4.)

Mr. Rankin's second story begins on May 17, 2010, the day he was assaulted. As he was escorted to the recreation cage by Correctional Officer (CO) Spade, he asked CO Spade with whom he would be sharing the exercising unit. (DSMF ¶ 5.) CO Spade refused to answer. (*Id*.) CO Spade told Mr. Rankin that if he did not go to recreation he would be placed in restraints. (DSMF ¶ 6.) Inmates Glass and Reid, who were already in the exercise unit, overheard this conversation. (DSMF ¶ 8.) Mr. Rankin believes because he asked with whom he would be exercising he appeared weak and thus "the inmate code was that he had to be assaulted."[2] (DSMF ¶ 14.) CO Spade then went over to speak with Glass and Reid. (DSMF ¶ 10.) He asked them if they could exercise with Mr.

---

[2] Mr. Rankin is certain that Mr. Reid and Mr. Glass over heard his statement to CO Spade. "They heard me say to Spade what I said." (Doc. 48-1, ECF p. 7.) "I go out to the rec cage while talking with Messer. I said, who am I going in with? I said, who are they? ... They heard me say that." (*Id*., ECF p. 8.)

-6-

Rankin because he was an "ex ARM dude." (*Id*.) Both Reid and Glass said they could be in the same recreation unit as Mr. Rankin.³ (DSMF ¶ 12.) After the assault Mr. Rankin learned that Mr. Reid was a member of the Nazi Lowriders gang out of California. (Doc. 48-1, ECF p. 5 and Doc. 53-3, ECF p. 9.) At no point did Mr. Rankin tell CO Spade, or any other BOP official, that he feared for his safety or wished to be placed in protective custody.⁴ (DSMF ¶ 7.)

The third theory related by Mr. Rankin begins the day before the incident. (DSMF ¶ 14.) On May 16, 2010, water from Mr. Rankin's flooded cell leaked onto the tier below Mr. Rankin's cell. The lower tier was occupied by members of the "California Brand" gang. (DSMF ¶ 15.) The story continues when California Brand members sent word to inmates going to recreation unit that they wanted Mr. Rankin killed because of the flood. (DSMF ¶ 16.)

All three stories conclude with Mr. Rankin being placed into the recreation cell with inmates Reid and Mr. Glass who then "sized [him] up" by asking him questions. (DSMF ¶ 17.) Mr. Rankin interpreted the interaction as a signal to him to get ready to be assaulted. (*Id*.) He did not alert staff to his safety concerns because "[y]ou've still got to hold your own no matter what," and that the "size [you] up stuff is a heart check to see who you

---

³ Mr. Rankin reports they responded "[Y]eah. He's cool, blah, blah." (Doc. 48-1, ECF p. 6.)

⁴ In his opposition materials, Mr. Rankin provides a portion of a April 25, 2012, transcript from Mr. Glass's criminal trial related to the asault. *See* Doc. 53-3. Mr. Glass testified that he told CO Raker not to put Mr. Rankin in the recreation unit with them because Mr. Rankin "was a problem." Doc. 53-3, ECF pp. 6 and 7. "I told the officer, Raker, don't put him in here." (*Id*., ECF p. 8.) "The dude is an issue. He's been causing issues. He's been flooding the tier." (*Id*., ECF p. 6.) "Flooding the tier, ripping up articles, flashing people, rubbing battery soot all over himself, barking out the window at officers, kicking the door, banging the stools into the wall, waking people up at night." (*Id*., ECF p. 7.)

are." (Doc. 48-1, ECF p. 11.)  Mr. Rankin believes at first inmates Glass and Reid "tr[ied] to be hard and not doing nothing.  Because they don't want to hit [him] because he] seem[ed] all right." (Doc. 48-1, ECF p. 9.)  Then "the biggest dude in the whole system practically," who was in a separate recreation unit, yelled to inmates Glass and Reid "that dude in there's no good.  You got to hit that dude." (DSMF ¶ 19.)  Inmates Glass and Reid then assaulted Mr. Rankin.  (DSMF ¶ 20.)

A correctional officer saw Reid and Mr. Glass assaulting Mr. Rankin.  (DSMF ¶ 22.) The officer called for assistance and ordered them to stop and allow Mr. Rankin to move to the sally port area of the recreation pen.  (DSMF ¶ 23.)  Inmates Reid and Glass complied and Mr. Rankin was removed from the unit without further incident.  (DSMF ¶ 24.)  The assault lasted approximately one minute.  (DSMF ¶ 28.)  Mr. Rankin was first taken to the institution's medical unit and then an outside hospital due to the seriousness of his injuries. (DSMF ¶ ¶ 25 - 26.)

When BOP officials reviewed the video surveillance tape of the incident, inmate Glass is seen "pulling a weapon out of his butt cheeks".  (Doc. 48-1, ECF p. 52.)  The weapon was described as "a sharpened plexiglass weapon with a small piece of string tied to one end." (*Id*., ECF p. 45; *see also* ECF p. 28.)

**IV.    Discussion**

The FTCA is a limited waiver of sovereign immunity with respect to tort claims for money damages against the United States.  *Millbrook v. United States,* ___ U.S. ___, ___, 133 S.Ct. 1441, 1442, 185 L.Ed.2d 531 (2013); *Sargent v. United States*, No. 15-1083,

2015 WL 4189973, *1 (3d Cir. July 13, 2015).  Pursuant to 28 U.S.C. § 1346(b), suits may be brought against the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  The Supreme Court of the United States has interpreted that statute to mean that "the United States waives sovereign immunity 'under circumstances' where local law would make a '*private person*' liable in tort."  *United States v. Olson*, 546 U.S. 43, 44, 126 S.Ct. 510, 511, 163 L.Ed.2d 306 (2005) (emphasis in original).  Because Mr. Rankin's claim of negligence arose in Pennsylvania, Pennsylvania substantive law applies.[5]  *See Toole v. United States*, 588 F.2d 403, 406 (3d Cir. 1978)

The FTCA, however, is subject to several exceptions, one of which is the FTCA's "discretionary function exception."  *See* 28 U.S.C. § 2680(a)-(n).  This exception provides that the United States is not liable under the FTCA for

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

---

[5] In Pennsylvania, to prevail in a negligence action, a plaintiff must demonstrate the following elements: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) a causal relationship between the breach and the resulting injury suffered by the plaintiff; and (4) actual loss suffered by the plaintiff.  *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 602 Pa. 346, 354, 980 A.2d 502, 506 (Pa. 2009).  Under Pennsylvania law, a plaintiff is required to show that the defendant's negligence was the proximate cause of his injury by a preponderance of the evidence.  *Baum v. United States*, 541 F.Supp. 1349, 1351 (M.D.Pa.1982).  Furthermore, Pennsylvania law defines proximate cause as causation which was a substantial factor in bringing about the injury. *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280, 1284 (Pa.1978).

-9-

The Third Circuit Court of Appeals has outlined a two-part test for determining when the discretionary function applies.

> To determine whether the discretionary function exception to the waiver of immunity applies, a court must determine (1) whether the act involves an element of judgment or choice, rather than a course or action prescribed by a federal statute, regulation or policy; and (2) even if the challenged conduct involves an element of judgment, whether the judgment is the kind that the discretionary function exception was designed to shield.

*Sargent*, 2015 WL 4189973, at * 2 (citing *Mitchell v. United States*, 225 F.3d 361, 363 (3d Cir. 2000)). "Because the purpose of the exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy ... the exception protects only governmental actions and decisions based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 323, 11 S.Ct. 1267, 1274, 113 L.Ed.2d 335 (1991)(internal marks and citations omitted). The "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id*. at 325, 111 S.Ct. at 1275.

While the plaintiff bears the burden of demonstrating that his claim falls within the scope of the FTCA's waiver of government immunity, the United States has the burden of proving the applicability of the discretionary function exception. *Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008). Because the United States has not waived its sovereign immunity with respect to discretionary functions, courts lack subject matter jurisdiction over acts falling within the discretionary function exception. *See Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 533, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988);

*Kellogg Brown & Root Services, Inc., v. United States*, No. 14-1200-RGA, 2015 WL 1966532, at *1 (3d Cir. Apr. 30, 2015).

In cases such as this which involve federal prisoners, it has been recognized that the government's duty of care is one of ordinary diligence. *See* 18 U.S.C. § 4042 (prison officials have a duty of "ordinary diligence to keep prisoners safe from harm"). The BOP is required to provide for the safekeeping, care, and subsistence of all federal prisoners pursuant to 28 U.S.C. § 4042, but Section 4042 does not indicate the manner in which this duty must be fulfilled, and BOP officials generally have broad discretion in fulfilling this statutory obligation. *Thrower v. United States*, 528 F. App'x 108, 111 (3d Cir. 2013); *Rinaldi v. United States*, 460 F. App'x 80, 81 - 82 (3d Cir. 2012). A prisoner has the right to bring a cause of action under the FTCA for a breach of the duty prescribed by Section 4042. *Muniz*, 374 U.S. at 164-65, 83 S.Ct. at 1859.

Prior to examining the two-part test of whether the discretionary function exception applies, the court must first "identify the conduct at issue." *Merando,* 517 F.3d at 165. Here Mr. Rankin seeks relief under the FTCA with respect to the May 17, 2010, assault by Reid and Glass. Mr. Rankin contends that prison officials were negligent in placing him in the recreation unit with inmates Glass and Reid even after he voiced concerns that "they had threatened his life on a number of occasions and that [he] refused to enter" the exercise unit. (Doc. 14, Am. Compl., ECF p. 9.) In his summary judgment opposition brief he also alleges that prison officials were negligent in their security screening of the recreation cage and his assailants because he was stabbed with a homemade weapon in a secure recreation area. (Doc. 52, Summ. J. Opp'n Br., ECF p. 6.) Clearly, the conduct

-11-

in question is the BOP's duty to protect Mr. Rankin from his assailants. Given the discretion conferred by 18 U.S.C. § 4042(a)(2) and (3), the conduct involved an element of choice and discretion. *See Sargent*, 2015 WL 4189973, at *2. It is well established that "there is no federal statute, regulation or policy that requires the BOP to take a particular course of action to ensure an inmate's safety from attack by other inmates." *Rinaldi*, 460 F. App'x at 81; *see also Sargent*, 2015 WL 4189973, at * 2. Thus, this case satisfies the first prong of the applicable test under the discretionary function exemption.[6] As for the second prong of the discretionary function exemption test, the BOP's policies are consistent with public policy concerns because the BOP and prison administrators must be given deference in implementing and executing their policies in order to preserve internal discipline and maintain institutional security. *See Bell v. Wolfish*, 441 U.S. 520, 547 – 48, 99 S.Ct. 1861, 1878 - 79, 60 L.Ed.2d 447 (1979). Specifically, the discretionary

---

[6] Mr. Rankin does not cite to any regulation or policy that takes away the discretion of prison staff in this situation. *Compare Gray v. United States*, 486 F. App'x 975, 978 (3d Cir. 2012) (nonprecedenetial) (first step not satisfied when prison procedures mandated that guards retrieve razors from SMU inmates after showers and inmate alleged he was injured by a razor during an attack by another inmate negligently allowed to keep his razor). While Mr. Rankin points to the Z Block post orders with respect to recreation, nothing in the post order's language removes the officer's discretion in placing inmates without known security separations in the same recreation unit. *See* Doc. 53-7, ECF p. 3. Mr. Rankin was not forced to exercise with inmates known to pose a security threat to his safety. Mr. Rankin never refused to enter the recreation unit, or asked to be removed from the unit, for security reasons. Inmate Glass told staff not to place Mr. Rankin in the recreation unit but his reasoning was not related to Mr. Rankin posing a threat to his personal safety or that he posed a threat to Mr. Rankin's safety due to their alleged rival gang affiliations, or suspected affiliations. Rather, he that voiced concern that Mr. Rankin "caus[es] issues". (Doc. 53-3, ECF pp. 6 - 7.) Consistent with the post orders, staff put three inmates in the recreation unit, who had no known separations, and then remained observant of the inmates in the unit. Mr. Rankin does not dispute that staff immediately responded to the assault which lasted approximately one minute after which he was extracted from the cell and provided medical care. Accordingly, Mr. Rankin has failed to demonstrate that the language of the post orders removed the officer's discretion in this situation of selecting recreation partners when there are no known separation concerns on file, and none of the involved inmates voiced concerns for their physical safety based on with whom they were placed in the recreation unit.

judgment conferred upon the BOP officials as to the best way to protect one inmate from attack from another is the kind of judgment the discretionary function exception was designed to shield. *Sargent*, 2015 WL 4189973, at *2; *see also Thrower v. United States*, 528 F. App'x at 111 (holding that discretionary function exception barred FTCA claim that BOP failed to protect prisoner by placing him in a cell with a dangerous inmate); *Rinaldi*, 460 F. App'x at 81 (holding that discretionary function exception barred FTCA claim that the BOP was negligent in failing to separate prisoner from his assailant who had a known violent history); *Donaldson v. United States*, 281 F. App'x 75, 78 (3d Cir. 2008) (holding that discretionary function exception bared FTCA claim that the BOP repeatedly ignored prisoner's reports of sexual harassment and threats of violence and failed to protect him from another prisoner).

The conduct at issue in this case is the type that the exception was intended to protect. The discretionary function exception applies as to Mr. Rankin's claim that BOP officials were negligent when placing him in the recreation unit, with inmates whom neither he nor prison officials knew posed a risk to his safety, but whom ultimately assaulted him. Thus, the court lacks subject-matter jurisdiction over this FTCA claim.

Next, as previously noted, in his opposition brief Mr. Rankin alleges that BOP employees failed to properly pat-search and screen the inmates placed in the recreation cage with him. The government did not seek summary judgment on this claim. The government also has not filed a reply brief to address this claim. As Mr. Rankin's administrative tort claim is not found in the record, the Court cannot definitively determine

whether Mr. Rankin exhausted his administrative remedies as to this claim.[7] It may be that Mr. Rankin is attempting to introduce this new claim of negligence via his opposition brief, something he may not do. *Bell v. City of Phila.*, 275 F. App'x 157, 160 (3d Cir. 2008) ("A plaintiff may not amend his complaint through amendment in his brief in opposition to a motion for summary judgment.")

Accordingly, while the court will grant the United States' motion to dismiss as to Mr. Rankin's claim of negligence based upon his placement in the recreation unit with Glass and Reid on May 17, 2010, the court will direct further briefing on the issue as to whether Mr. Rankin's claim that prison officials were negligent in failing to properly search his assailants and the recreation unit is properly presented, and if so, the government should address the merits of that claim.

An appropriate Order follows.

                                           **/s/ A. Richard Caputo**
                                           **A. RICHARD CAPUTO**
                                           **United States District Judge**

**Date:  October 5, 2015**

---

[7] In order to obtain relief in federal court under the FTCA, a litigant must first have exhausted their administrative remedies. *See Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015); 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States for monetary damages for injury ... caused by the negligent or wrongful act or omission of an employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency....') As Mr. Rankin's FTCA administrative remedy is not part of the record, the court has no way of determining whether this claim is properly presented.